IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ADAM LUSTER and<br>CRYSTAL LUSTER,<br><br>    Plaintiffs,<br><br>    v.<br><br>GORDON LEDBETTER, in his<br>individual capacity,<br>CHRIS MILES, in his<br>individual capacity, and<br>A.J. RENFROE, in his<br>individual capacity,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>2:08cv551-MHT<br>(WO) |

OPINION AND ORDER

The issue presented in this case, brought pursuant to 42 U.S.C. § 1983, is whether, in the course of arresting plaintiffs Crystal and Adam Luster, officers of the Eclectic, Alabama Police Department violated the Fourth Amendment by forcing Mrs. Luster to stand nude outside her home in front of her neighbors and other officers and by striking Mr. Luster with sufficient force to break his jaw or by failing to protect him from the strike.  The Lusters name the following three officers as defendants

in their individual capacities:   Police Chief Gordon
Ledbetter, Assistant Police Chief Chris Miles, and Police
Officer A.J. Renfroe.   Jurisdiction is proper pursuant to
28 U.S.C. § 1331.

This lawsuit is now before the court on the three
officers' motion for summary judgment on all claims.  For
the reasons explained below, the motion will be granted
in part and denied in part.


## I.   SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a
matter of law." Fed. R. Civ. P. 56(c).  The court's role
at the summary-judgment stage is to view the evidence in
the light most favorable to the non-moving party and draw
all reasonable inferences in favor of that party.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

The facts in this case are heavily disputed. Participants and witnesses have narrated the events of the night in issue in ways that differ in critical respects. Pursuant to Fed. R. Civ. P. 56, the following narrative tracks the Lusters' contentions, where supported by evidence, regarding what happened.

The Eclectic Police obtained a warrant to search the Lusters' home. The Eclectic Police agreed that the Elmore County Sheriff's Department SWAT team would enter and secure the residence by bringing anyone inside the home outside. Chief Ledbetter, Assistant Chief Miles (who was in charge of the Luster investigation), and Officer Renfroe were then to conduct the search.

On July 12, 2006, at around 10:30 p.m., the Lusters were at home in bed when they heard glass breaking in

another room.  Mr. Luster got up and opened the front door.  The Elmore County SWAT team had already forced its way through the outer door.

Mr. Luster was pushed to the ground, his hands were tied using zip ties, and a bag was placed over his head. He was pulled to his feet and out of the house by SWAT team member John Troy Evans, who turned him over to Officer Renfroe.  After he was brought out of the house, Mr. Luster felt a blow to the side of his face and lost consciousness.  Because a bag was over his head, he could not see who had struck him, although Swat Member Evans's testimony suggests that Renfroe was the officer standing closest to him at that time.  A neighbor reports seeing Mr. Luster on his knee at one point, favoring his left side.  Mr. Luster did not regain consciousness until he was being transported to the jail.

By the time Mr. Luster was released a day later, his jaw was swollen and he was having difficulty opening his mouth.  He was treated for a fractured jaw, and,

ultimately, underwent surgery to implant a metal plate and screws in his jaw.

Meanwhile, on the night of the search, Mrs. Luster remained in the bed while Mr. Luster went to the door. A SWAT team officer zip-tied her hands and brought her outside through the front door, where the three Eclectic officers were waiting. She was then led to Chief Ledbetter, who took hold of her arm. Although Mrs. Luster was compliant and still restrained, someone then placed a bag over her head.

Throughout this process, Mrs. Luster was nude and exposed to a dozen or so other people on the scene. The SWAT team had not permitted her to dress before restraining her. Instead, after she was restrained, a team member partially covered her back with a sheet. The sheet, however, slipped off as she was pulled out of the house, and no effort was made to retrieve it or otherwise cover her. At some point, a female officer appeared on the scene and went inside to retrieve Mrs. Luster's

clothing.  During the entire time that Mrs. Luster stood there, uncovered, the sheet that could have covered her lay on the ground.


### III.  DISCUSSION

Mr. Luster contends that Police Chief Ledbetter, Assistant Chief Miles, and Officer Renfroe either used excessive force against him or failed to protect him from excessive force, all in violation of the Fourth Amendment. Mrs. Luster contends that the officers caused or allowed her to remain unclothed outside her home in full view of the people, in violation of the Fourth Amendment.  The officers respond that the Lusters have not shown that their rights were violated and, alternately, that, even if the Lusters' rights were violated, the officers are entitled to qualified immunity.

A.  Whether the Lusters' Fourth
Amendment rights were violated

1.  Mr. Luster's claims

a.  Use of excessive force

Whether the force Chief Ledbetter, Assistant Chief
Miles, and Officer Renfroe used against Mr. Luster was
excessive depends on context, including "the severity of
the crime at issue, whether the suspect pose[d] an
immediate threat to the safety of the officers or others,
and whether he [was] actively resisting arrest or
attempting to evade arrest by flight." Bashir v. Rockdale
County, 445 F.3d 1323, 1333 & n. 10 (11th Cir. 2006)
(quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).
However, "gratuitous use of force when a criminal suspect
is not resisting arrest constitutes excessive force."
Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008).

The facts described by Mr. Luster present a classic
excessive-force violation.  It is undisputed that, at the
time he was brought out of the house, in the custody of
law enforcement, Mr. Luster's hands were tied behind his

7

back, a bag was over his head, he was not resisting (although he may have been cursing), and he was outnumbered by law-enforcement officers.  It is therefore apparent that force sufficient to fracture Mr. Luster's jaw was unnecessary.  The Eclectic officers respond, however, that, because Mr. Luster has provided no specific evidence as to which of them struck him and thus because he cannot make out an essential element of his claim, his claim must fail.

The Lusters have submitted testimony that Mr. Luster was struck, while handcuffed with a bag over his head, after Renfroe took custody of him at the entrance to his home when he was brought out. This evidence is sufficient to allow a jury to find that it was Renfroe who struck Mr. Luster and broke his jaw.  To be sure, Mr. Luster cannot unequivocally identify Renfroe as the officer who struck him, but this is so only because the SWAT team had placed a bag over his head.  Were the court to credit the Eclectic officers' contention that, because Mr. Luster

8

cannot identify them, his excessive-force claim against

must fail, "all that police officers would have to do to

use excessive force on an arrestee without fear of

consequence would be to put a bag over the arrestee's head

and administer the beating in silence." Velazquez v. City

of Hialeah, 484 F.3d 1340, 1342 (11th Cir. 2007).

However, Mr. Luster has offered no evidence that would

allow a jury to conclude that Chief Ledbetter or Assistant

Chief Miles struck him.  There is no testimony suggesting

that they were standing in his immediate vicinity at the

time he was brought out of the home.

The Eleventh Circuit Court of Appeals has held

officers on the scene of an excessive-force violation

accountable where the officers, by virtue of their

presence on the scene, must have either directly

participated in striking the plaintiff or clearly had the

opportunity to intervene.  See Velazquez v. City of

Hialeah, 484 F.3d 1340, 1342 (11th Cir. 2007) (holding

that, although the plaintiff could not identify which

officer beat him, the two officers' presence at the beating would permit the jury to conclude that both officers were liable, either for excessive force or failure to intervene). In other words, under this line of cases, each defendant, by being present, necessarily committed a constitutional violation.

However, in this case, Mr. Luster was struck only once and there is no evidence suggesting that this single blow could have been prevented. Thus, only one officer could have hit him, and, as explained more fully below, no officer other than the officer who struck him could have intervened. Thus, there was only one constitutional violation committed by a single defendant. Under these facts, only one officer can be liable, and the record is inadequate to support a conclusion that anyone other than Renfroe could be that officer.

Accordingly, summary judgment in favor of the officers on Mr. Luster's excessive-force claim will be denied

against Officer Renfroe and granted against Chief
Ledbetter and Assistant Chief Miles.


          b.  Failure to protect

     With respect to Mr. Luster's claim against the three
Eclectic officers for failure to protect him against the
excessive use of force, "[a]n officer who is present at
the scene and who fails to take reasonable steps to
protect the victim of another officer's use of excessive
force, can be held liable for his nonfeasance," provided
that "the non-intervening officer was in a position to
intervene yet failed to do so."  <u>Hadley v. Gutierrez</u>, 526
F.3d 1324, 1330-31 (11th Cir. 2008) (quotation marks and
citations omitted).

     Here, Mr. Luster has submitted evidence that he was
struck once without provocation, but he has offered no
evidence or even argument suggesting that he was struck
more than once or that the single blow could have been
prevented.  Thus, his claim that the officers failed to

11

protect him from excessive force must fail, and summary judgment will be granted in favor of the officers on this claim.  See id. at 1331 ("Hadley presented no evidence from which a reasonable jury could find that Gutierrez could have anticipated and then stopped Ortivero from punching Hadley once in the stomach.").

### 2.  Mrs. Luster's unreasonable-seizure claim

Mrs. Luster maintains that Chief Ledbetter, Assistant Chief Miles, and Officer Renfroe violated the Fourth Amendment when they, without need while in their custody, forced or allowed her to remain outside her home without any clothing or other covering, in full view of her neighbors and other officers.  Mrs. Luster's complaint is not that police used excessive force, but rather that her arrest was effectuated in an unreasonable manner. Where an individual contends that a seizure was conducted unreasonably because it was "conducted in an extraordinary manner" or because it was "unusually harmful to an

12

individual's privacy," Whren v. United States, 517 U.S. 806, 818 (1996), the question is whether, under the totality of the circumstances, the officers' actions in conducting the seizure were reasonable.  See, e.g., Graham v. Connor, 490 U.S. 386, 397 (1989).

If the three Eclectic City Police Officers forced or allowed Mrs. Luster to stand outside, in full view of several male officers and her neighbors, without any covering for some unnecessary amount of time after the premises had been secured (that is, after her hands had been tied behind her back and she posed no threat to the officers), she has stated the basis for an unreasonable seizure in violation of the Fourth Amendment.

In L.A. County v. Rettele, 550 U.S. 609 (2007), the Supreme Court stated that the police did not violate the Fourth Amendment when two occupants of a home, one male and one female, were required to stand naked for several minutes while the officers secured the premises.  However, the Court clarified that its holding was grounded in the

fact that the occupants were left without clothes no
longer than necessary to secure the premises: "This is not
to say, of course, that the deputies were free to force
[plaintiffs] to remain motionless and standing for any
longer than necessary.  We have recognized that 'special
circumstances, or possibly a prolonged detention,' might
render a search unreasonable." Rettele, 550 U.S. at 615
(quoting Michigan v. Summers, 452 U.S. 692, 705, n.21
(1981)); see also Hall v. Shipley, 932 F.2d 1147, 1153-54
(6th Cir. 1991) (forcing individual to remain nude for 20-
30 minutes in January while officers searched his home
violated clearly established law); DePaolo v. Brunswick
Hills Police Dep't, 2007 WL 2071947, 4-5 (N.D. Ohio 2007)
(Boyko, J.) (collecting cases where courts have concluded
that "forcing a person to remain unclothed during a search
may be a violation of that person's Fourth Amendment
rights, depending on the circumstances").

     Police officers may no more do unnecessary violence
to a person's dignity or privacy than they may do

unnecessary violence to a person's body.  The critical query is how long Mrs. Luster was forced to remain nude for no reason; the longer she was left uncovered after the premises were secured and after it was obviously easy to cover her, the more likely it is that her arrest was effectuated in an unreasonable manner.

Here, Mrs. Luster was forced to stand without any covering over her body for several minutes, in front of her home and in full view of the officers and neighbors. After she had been handed over to the three Eclectic officers, they left her standing in this position while a sheet that could have covered her lay on the ground next to her.  The evidentiary record is void of any reason for the officers' delay.  Absent any such reason, it was unreasonable for the officers to force or allow Mrs. Luster to stand nude while under arrest.

Admittedly, the question in this case is close; had Mrs. Luster's exposure been more brief, or had the sheet not been on the ground next to her as a readily available

cover, the court might hesitate to find a constitutional violation.  However, unlike the home occupants in <u>Rettele</u>, Mrs. Luster was left exposed for a period of time after the premises had been secured--that is, for a period of time after there was no longer any plausible reason for her to be left exposed.  Because each of the three Eclectic officers was present on the scene at the time that Mrs. Luster was brought out, they, separately or together, could have prevented the violation of Mrs. Luster's rights and thus all three could be liable.  <u>Cf</u>. <u>Velazquez</u>, 484 F.3d at 1342 (the evidence permitted the jury to conclude that all the officers were liable, that is, that "both of the officers administered the excessive force or that one beat him while the other failed to intervene").  Thus, Mrs. Luster has stated a viable constitutional violation against all three officers.

B.   Whether the Eclectic officers are entitled
to qualified immunity

Chief Ledbetter, Assistant Chief Miles, and Officer Renfroe also argue that they are entitled to qualified immunity on all claims.  The court addresses this issue as to the remaining claims only: Mr. Luster's excessive-force claim and Mrs. Luster's unreasonable-seizure claim.

The qualified-immunity doctrine insulates government employees from the burden of litigation against them in their individual capacities stemming from actions taken pursuant to their discretionary authority.  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).  Determining whether a government employee is entitled to qualified immunity involves two steps.  Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236 (11th Cir. 1992).  First, the employee must establish that he acted within the scope of his discretionary authority when the allegedly wrongful act occurred, a point which is not disputed here, as the parties agree that Eclectic officers were acting in their discretionary authority when the Lusters were arrested.

17

Once it is shown that the government employee was acting within his discretionary authority, the burden shifts to the plaintiff to prove that the employee's action violated clearly established law. <u>Sims</u>, 972 F.2d at 1236. As explained above, the Lusters have put forth sufficient evidence to show that Eclectic officers violated Mr. Luster's Fourth Amendment right to be free from excessive force and sufficient evidence to show that the officers violated Mrs. Luster's Fourth Amendment right to be free from unreasonable seizure. Thus, the only remaining question is whether these rights were clearly established at the time of the violations. <u>See Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002).

## 1. Mr. Luster's claim

Mr. Luster's right to be free from excessive force, and the particular force described in this case, was very clearly established at the time of his arrest. <u>See Hadley v. Gutierrez</u>, 526 F.3d 1324, 1333-34 (11th Cir. 2008)

18

("[A] handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002."). It is a core Fourth Amendment principle that law-enforcement officers may not unnecessarily harm an individual during arrest. See, e.g., Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (officer used excessive force by punching a non-resisting suspect once in the stomach); Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002) (denying qualified immunity based on clearly excessive force where officer slammed suspect into car after she had been handcuffed); Priester v. City of Riviera Beach, 208 F.3d 919, 926-27 (11th Cir. 2000) (denying qualified immunity in light of clearly excessive force where officer allowed police dog to attack arrestee who had already followed officer's order to lie down on ground); Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000) (officers used excessive force by kicking and beating a handcuffed and non-resisting defendant); Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997) (denying

19

qualified immunity based on clearly excessive force where officer broke arm of suspect who "docilely submitted" to officer's order to "get down").

A reasonable police officer would therefore know that striking a cuffed, compliant individual with sufficient force to fracture his jaw serves no legitimate law-enforcement purpose and amounts to a violation of the constitutional right to be free from excessive force. Thus, Officer Renfroe is not entitled to qualified immunity on Mr. Luster's claim of excessive force.

### 2.   Mrs. Luster's claim

Although, as explained above, Mrs. Luster has shown that the three Eclectic officers violated the Fourth Amendment, she has not carried her burden to show that her right was clearly established at the time of the violation.

At the time of the violation, there was no binding Supreme Court or Eleventh Circuit law establishing with

specificity that the Eclectic officers' treatment of Mrs.
Luster violated the Fourth Amendment.  <u>Rettele</u> and <u>De
Paolo</u>, two of the cases upon which this court relies in
deciding the constitutional question, had not yet been
decided at the time of Mrs. Luster's seizure and although
the third case, <u>Shipley</u>, is not an Eleventh Circuit
decision.  <u>See</u> <u>Courson v. McMillian</u>, 939 F.2d 1479, 1498
(11th Cir. 1991) (stating that "a law enforcement officer
cannot be held to a standard of conduct which is unsettled
by the Supreme Court or this circuit at the time of his
actions which are questioned.").

Nevertheless, a reasonable police officer should know
that he cannot, without justification, forcibly expose a
seized person, completely nude, to the public.  It is
clear that a reasonable officer would have the common
sense to know that such unnecessary, deeply humiliating
invasion of privacy is unreasonable under the Fourth
Amendment.  <u>Cf</u>. <u>Hope v. Pelzer</u>, 536 U.S. 730, 745 (2002)
("The obvious cruelty inherent in this practice should

21

have provided respondents with some notice that their alleged conduct violated Hope's constitutional protection against cruel and unusual punishment."). What is not so clear, however, is whether this obvious, but broad, observation applies to the specific facts presented by Mrs. Luster.

It was the Elmore County SWAT team (whose members are not defendants in this case), not the Eclectic officers, that brought Mrs. Luster out of her home and exposed her nude to the public after her home had been secured. Not until she was turned over to the Eclectic officers was clothing obtained for her. The court has faulted the Eclectic officers not for doing nothing but rather for not acting quickly enough without giving any reason for the delay. Moreover, the court is not saying that there is some set acceptable time period during which police must obtain clothing for a person after securing her home and that any period beyond is unacceptable. As the court has made clear, there is no bright line stated, and all that

can be said is that the longer a person is left uncovered after the premises are secured and after it is obviously easy to cover her, the more likely it is that her seizure was effectuated in an unreasonable manner.  The question, therefore, is whether, under the totality of the circumstances, a reasonable officer would know that the delay has crossed the Fourth Amendment line.

Here, the court cannot say, in light of the case law and the all circumstances presented, that it should have been obvious to the Eclectic officers that the delay (some of which was not even their doing) had crossed the line. Indeed, as stated previously, this is a close case, and qualified immunity exists to shield officers from liability in close cases where a reasonable officer could have believed the action in question was lawful.  Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002).

Accordingly, the court concludes that the three Eclectic officers are entitled to qualified immunity on Mrs. Luster's claim.

***

For the foregoing reasons, it is ORDERED as follows:

(1) Defendants Gordon Ledbetter, Chris Miles, and A.J. Renfroe's motion for summary judgment (doc. no. 22) is denied as to plaintiff Adam Luster's claim for excessive force against defendant Renfroe.  Only this claim will go to trial.

(2) Said motion is granted in all other respects, with judgment entered in favor of defendants Ledbetter, Miles, and Renfroe and against plaintiffs Crystal and Adam Luster in these respects, with the Luster plaintiffs taking nothing by their complaint in these respects.

DONE, this the 10th day of August, 2009.

   /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE